UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DANIEL ILIFF,                          )
                                       )
          Plaintiff,                   )
                                       )
     vs.                               )     No. 4:10-CV-1755(CEJ)
                                       )
METROPOLITAN LIFE INSURANCE            )
COMPANY,                               )
          Defendant.                   )


## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion for summary judgment.
Plaintiff opposes the motion and the issues have been fully briefed.

Plaintiff brings this action pursuant to the Employee Retirement Income Security
Act (ERISA), 29 U.S.C. § 1132(a)(1)(b), to recover long term disability (LTD) benefits
he asserts are due under a group policy issued by the defendant. On August 20, 2007,
plaintiff submitted a claim for LTD benefits after suffering a work-related injury. The
defendant approved plaintiff's claim and provided LTD benefits for a twenty-four month
period. The defendant also informed plaintiff that his benefits could continue beyond
twenty-four months if he provided objective evidence of radiculopathy, a disorder not
subject to a limitation period. On August 12, 2009, plaintiff's benefits were terminated
due to his failure to provide objective evidence of radiculopathy. Plaintiff claims that
he provided objective evidence of radiculopathy, and therefore, his LTD benefits should
have continued beyond the limitation period.

**I. Background**

The factual background of this case is undisputed. Defendant has submitted, on behalf of both parties, the administrative record created during the claims process. In addition, the Court has received the affidavit of defendant's litigation specialist, Timothy D. Suter.

Plaintiff was employed as a maintenance mechanic for MasterChem from June 2002 until May 2007. (ML00229[1]). On October 29, 2004, plaintiff injured his back at work while rebuilding and welding a pump. (ML00449). On April 18, 2006, plaintiff underwent a laminectomy with discectomy at L4-L5 to resolve his back injury. Shortly after the surgery, plaintiff returned to work on light duty. (ML00002). On February 7, 2007, plaintiff injured his arm, shoulder, and elbow at work while lifting a forty-five pound case of paint. (ML00229). Plaintiff was diagnosed with right carpal tunnel syndrome and left lateral epicondylitis. (ML00229-ML00237). He underwent surgery for the carpal tunnel and an injection in his left common extensor origin. He was released to work with no restrictions on July 23, 2007. (ML00239). However, plaintiff did not return to work due to ongoing back pain. (ML00002).

### Relevant Policy Provisions

As a MasterChem employee, plaintiff had LTD benefits under the Masco Corporation Employees' Long Term Disability Plan. Defendant is the claim fiduciary of the plan and is responsible for making claim determinations. To receive long term disability benefits under the plan, a beneficiary must be disabled. The plan provides:

> " Disabled" or "Disability" means that due to sickness, pregnancy, or accidental injury, you are receiving Appropriate Care and Treatment from a Doctor on a continuing basis; and

---

[1]Citations to "ML-----" refer to the administrative record.

1. during your Elimination Period and the next 24 month period, you are unable to earn more than 80% of you Predisability Earnings or Indexed Predisability Earnings at your Own Occupation for any employer in your Local Economy; or

2. after the 24 month period, you are unable to earn more than 60% of your Indexed Predisability Earnings from any employer in your Local Economy any gainful occupation for which you are reasonably qualified taking into account your training, education and experience and Predisability Earnings.

(ML00654-00655). The plan further provides that monthly benefits are limited to a

twenty-four month period if the beneficiary is disabled due to a:

neuromusculosketal and soft tissue disorder including, but not limited to, any disease or disorder of the spine or extremities and their surrounding soft tissue; including sprains and strains of joints and adjacent muscles, unless the disability has objective evidence of:

a. seropositive arthritis

b. spinal tumors, malignancy, or vascular malformations

c. radiculopathies

d. myelopathies

e. traumatic spinal cord necrosis; or

f. myopathies

(ML00663). The plan defines radiculopathies as a "disease of the peripheral nerve

roots supported by objective clinical findings of nerve pathology." (ML00663). The

plan also states:

In carrying out their respective responsibilities under the Plan, the Plan Administrator and other plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

(ML00677).

**Plaintiff's Claim and Appeal**

On August 20, 2007, plaintiff submitted an application for LTD benefits. (ML00525-ML00533). On September 14, 2007, the defendant approved plaintiff's claim for LTD benefits due to evidence of a neuromusculoskeletal disorder. (ML00509-ML00511). In a letter dated November 19, 2008, defendant informed plaintiff that his LTD benefits would end on August 12, 2009, unless he provided objective evidence of a disability not subject to the "Limitation of Disabilities Due to Particular Conditions" provision of the plan. (ML00436). Defendant sent plaintiff another letter on August 4, 2009, stating that plaintiff's benefits would terminate on August 12, 2009, because there was no evidence that plaintiff was disabled from radiculopathy or any other condition not subject to a twenty-four month limitation period. (ML00389). The defendant also informed plaintiff of his appeal rights. (ML00390).

Plaintiff appealed on October 6, 2009, asserting that he provided the defendant with objective evidence of radiculopathies. (ML00277). In his appeal, plaintiff submitted depositions from Thomas Lee M.D., the orthopedic surgeon who performed plaintiff's back surgery, and Raymond Cohen D.O, a neurologist who examined plaintiff in 2005, 2007 and 2008. (ML00282, ML00299). Dr. Cohen testified that he diagnosed plaintiff with radiculopathy in 2005. (ML00335). Dr. Lee testified that plaintiff showed no signs of radiation to the legs or radiculopathy after his back surgery in 2006. (ML00288-ML00289).

To assist in evaluating plaintiff's appeal, defendant's independent physician, Howard P. Taylor, M.D., reviewed plaintiff's medical records and the depositions from Dr. Lee and Dr. Cohen. (ML00184-ML00189). Dr. Taylor concluded that:

4

> The medical records do not support that Mr. Iliff has [radiculopathy]. The records indicate that he did have radiculopathy in 2004. According to Dr. Lee this had been resolved.

(ML00199). On November 25, 2009, the defendant sent Dr. Taylor's report to plaintiff's treating physicians and attorney. (ML00219). The defendant requested that the treating physicians comment on Dr. Taylor's report by December 4, 2009. If the treating physicians did not respond by that time, the defendant would assume that the physicians did not intend to respond. (ML00219). The physicians did not respond to Dr. Taylor's report. Therefore, on December 11, 2009, the defendant upheld the termination of plaintiff's LTD benefits. (ML00162-ML00164). The defendant stated in part:

> In summary, none of Mr. Iliff's current disabling diagnoses fall under the exclusionary diagnoses of the neuromusculoskeletal limited benefit condition in his plan. Although medical records indicate that Mr. Iliff did have radiculopathy in 2004, Dr. Lee indicated that the radiculopathy had resolved. Therefore, we find that the original determination to terminate benefits effective August 13, 2009 was appropriate as Mr. Iliff does not have a current disabling diagnosis that is an exclusionary diagnosis to his plan's Neuromusculoskeletal limited benefit condition to support limitations beyond that time. Benefits must be administered in accordance with Mr. Iliff's employer's plan.

(ML00164).

### II. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and

must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

### III. Discussion

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). When, as is the case here, the plan gives the administrator discretion to determine benefit eligibility or construe the terms of the plan, the administrator's decision is reviewed under a deferential abuse of discretion standard. Janssen v. Minneapolis Auto Dealers Ben. Fund, 477 F.3d 1109, 1113 (8th Cir. 2006).

Under the abuse of discretion standard, the Court must defer to the decision made by the plan administrator unless the decision is unreasonable.[2]  Jackson v. Prudential Ins. Co. of America, 530 F.3d 696, 701 (8th Cir. 2008); see also Wakkinen, 531 F.3d at 583 (courts will not disturb the administrator's decision if it was reasonable; *i.e.*, where substantial evidence exists to support the decision).  An administrator's decision will be considered reasonable if "a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision."  Phillips-Foster v. UNUM Life Ins. Co. of America, 302 F.3d 785, 794 (8th Cir. 2002) (quoting Donaho v. FMC Corp., 74 F.3d 894, 899 (8th Cir. 1996) (abrogated on other grounds)).  Therefore, the administrator's decision need not be the only sensible one, so long as the decision provides a reasoned explanation, based on the evidence, in support of a particular outcome.  Id.

In determining the reasonableness of an administrator's interpretation, courts consider:  (1) whether the interpretation is consistent with the goals of the policy;  (2) whether the interpretation renders any language in the policy meaningless or internally inconsistent;  (3) whether the interpretation conflicts with the substantive or procedural requirements of the ERISA statute;  (4) whether the administrator has interpreted the term at issue consistently;  and (5) whether the interpretation is contrary to the clear language of the policy.  Id. (citing Finley v. Special Agents Mut. Ben. Ass'n, Inc., 957 F.2d 617, 621 (8th Cir. 1992)).  If the interpretation is reasonable, the court then

---

[2]"Abuse of discretion," "arbitrary and capricious," and "reasonable" are synonymous in the context of reviewing a denial of benefits under ERISA.  West v. Aetna Life Ins. Co., 171 F. Supp.2d 856, 866 n.2 (N.D. Iowa 2001) (citing Donaho v. FMC Corp., 74 F.3d 894, 898-900 (8th Cir. 1996)).

examines whether the plan administrator reasonably applied that interpretation to the facts of the claim.  Id. at 1014 (Gruender, J., dissenting); West v. Aetna Life Ins. Co., 171 F. Supp. 2d 856, 866 (N.D. Iowa 2001) (noting that the five-factor test is not "instructive" when reviewing the plan administrator's determination of the facts).  For this inquiry, courts focus on whether the decision is supported by substantial evidence, which is more than a scintilla but less than a preponderance.  Id.

The existence of a conflict of interest may also be a factor in the abuse of discretion analysis.  A conflict of interest exists when the entity that administers the plan "both determine whether an employee is eligible for benefits and pays benefits out of its own pocket."  Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008).  As explained in Glenn:

> [W]hen judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one. . . Any factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance.  [A] conflict of interest . . ., for example, should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration.  It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

Id. at 117 (citations omitted).  The presence of a conflict of interest does not entitle a claimant to *de novo* review, however.  Wakkinen v. UNUM Life Ins. Co. of America, 531 F.3d 575, 581 (8th Cir. 2008).  Rather, the court considers a conflict of interest as a factor in determining whether there was an abuse of discretion.

At issue here is defendant's interpretation of the twenty-four month limitation

provision of the plan.  The defendant interpreted the provision to require beneficiaries to submit objective evidence of radiculopathy at the end of the twenty-four months in order for LTD benefits to continue.  Plaintiff argues that the plan does not specify when objective evidence of radiculopathy must be submitted, and therefore, the defendant should have considered medical reports from 2005 and 2009 showing radiculopathy and radiation to the legs.

Applying the abuse of discretion standard, the Court finds that defendant's interpretation was reasonable.  The plan states that benefits will terminate after twenty-four months, unless a beneficiary provides objective evidence of radiculopathies.  The purpose of this provision is to limit defendant's liability for disabilities due to neuromuscloskeletal and soft tissue disorders.  See McClenahan v. Metropolitan Life Ins. Co., 621 F. Supp.2d 1135, 1147 ( D. Colo. 2009).  If beneficiaries were not required to show radiculopathy at the end of the twenty-four month period, then a claim for continued disability benefits could be based on a showing of radiculopathy that existed at some other time, even if the disorder did not contribute to the disability at the time the twenty-four month period expired.  This outcome would be inconsistent with the purpose of the plan.  Furthermore, other federal courts have held that it is reasonable to require objective evidence of radiculopathies at the end of the twenty-four month period. See Iley v. Metropolitan Life Ins. Co., 261 Fed. Appx. 860, 864 (6th Cir. 2008); McClenanhan v. Metropolitan Life Ins. Co., 416 Fed. Appx. 693,697 (10th Cir. 2011)("we can't say MetLife acted unreasonably when it denied benefits after she failed to provide evidence of radiculopathies on or after March 13,2006.")

The Court further finds that the decision to terminate plaintiff's benefits was supported by substantial evidence. Plaintiff claims that he provided objective evidence of radiculopathy by submitting medical reports from Dr. Cohen. Dr. Cohen examined plaintiff in 2005 after he injured his back and diagnosed him with a lumbar disc herniation and left lumbar radiculopathy. (ML00450). Dr. Cohen also examined plaintiff on February 12, 2007 and on March 13, 2008. In both visits, Dr. Cohen noted that plaintiff needed ongoing treatment for pain in his shoulders, elbows, and hands. (ML00453-ML00460). Plaintiff also provided medical reports from Osias Almiron, M.D. and Alan Sandidge M.D. Dr. Almiron saw plaintiff in 2007 and diagnosed him with a herniated disc at L4, L5 and severe back pain with sciatica bilateral. (ML0496-ML0498). Dr. Sandidge examined plaintiff on March 3, 2009, and diagnosed him with chronic back pain with radiation to the legs. (ML00412). Dr. Sandidge further stated that plaintiff could not return to work and that back pain limited his ability to lift more than ten pounds, climb, twist , bend, stoop, reach above shoulder level, and push or pull objects. (ML00414).

Plaintiff, however, did not submit these medical records on or after August 12, 2009, the date in which the twenty-four month limitation period ended. The most recent records plaintiff provided demonstrating a diagnosis of radiculopathy were from2005. None of plaintiff's treating physicians diagnosed him with radiculopathy after 2005. Furthermore, plaintiff did not provide any objective evidence, such as testing, to support the diagnoses of Dr. Sandidge, Dr. Almiron and Dr. Cohen. Generally, "it is not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence." McGee v. Reliance Standard Life Ins., Co., 360 F.3d 921, 925 (8th Cir. 2004).

Further, Dr. Taylor reviewed plaintiff's medical records and concluded that there was no evidence of radiculopathy. Plaintiff's medical records indicate that he did have radiculopathy in 2004, however, it was resolved by his laminectomy and discetonmy in 2006. Plaintiff contends that Dr. Taylor failed to consider Dr. Sandidge's diagnosis of radiation in plaintiff's legs. The Court finds that Dr. Taylor did consider Dr. Sandidge's diagnosis and, after doing so, concluded that there was no objective evidence to support this finding.

Plaintiff's claim of a conflict of interest is also unavailing. Although the defendant both pays benefits and administer the benefits plan, plaintiff has not submitted any evidence suggesting a history of biased decisions by the plan administrator. Also, the factors of this case are not close in which a conflict of interest serves as a tie-breaker persuading the Court to rule in plaintiff's favor.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment [#14] is **granted**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 5th day of March, 2012.